UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SHANNON RAE IRWIN, | ) 4:12CV0420 |
| | ) |
| Petitioner | ) |
| | ) JUDGE DONALD NUGENT |
| v. | ) (Mag. Judge Kenneth S. McHargh) |
| | ) |
| GININE TRIM, | ) |
| Warden, | ) |
| | ) |
| Respondent | ) REPORT AND |
| | ) <u>RECOMMENDATION</u> |

McHARGH, MAG. JUDGE

The petitioner Shannon Rae Irwin ("Irwin") has filed a petition pro se for a writ of habeas corpus, arising out of her 2005 conviction for three counts of felonious assault in the Mahoning County (Ohio) Court of Common Pleas. (Doc. 1.) In her petition, Irwin raises four grounds for relief:

1. The trial court's denial of petitioner's motion for a new trial was an abuse of discretion.

2. The trial court denied petitioner a due process right by failing to provide petitioner with an expert witness to assist at her sentencing hearing.

3. The trial court denied petitioner a constitutional right when it denied petitioner's motion to have witnesses subpoenaed for the sentencing hearing.

4. The trial court abused its discretion by allowing the state to file two separate answers against petitioner's single motion for new trial and to present newly discovered evidence.

(Doc. 1, memorandum in support, at 5, 7-9.)

The respondent filed a Return of Writ (doc. 7), but Irwin has not filed a Traverse. Irwin did provide a memorandum in support of her petition. (Doc. 1, memorandum in support.)

### I. FACTUAL AND PROCEDURAL BACKGROUND

The state court of appeals set forth an extensive factual and procedural background, which is excerpted here:

> [Irwin] was convicted of assaulting Edward Hoopes, who was at the time in an advanced stage of amyotrophic lateral sclerosis[1] ("ALS"), a debilitating and ultimately fatal neuromuscular disease. [Irwin] was Hoopes' fiancé and state-appointed caretaker.
>
> * * * * *
>
> [Irwin] was indicted on September 2, 2004, on one count of felonious assault. A superseding indictment was filed on December 16, 2004, adding two counts of felonious assault, R.C. 2903 .11(A)(1), all second degree felonies. The first count charged [Irwin] for the assault on July 7, 2004. The second and third counts charged [Irwin] for assaults committed in May and June of 2004, respectively.
>
> * * * * * *
>
> Hoopes suffered extensive injuries, to the point that he received a blood transfusion due to the grave amount of blood loss he suffered as a result of the July 7th assault. According to the testimony at trial, Hoopes had multiple lacerations and areas of bruising, and multiple areas of burns and ecthyma in the chest, back, and genital areas. His entire lower extremities were very swollen and bruised. (Tr., p. 316.)
>
> * * * * * *

---

[1] Also known as "Lou Gehrig's Disease."

2

At the original sentencing hearing conducted on January 11, 2006, during her colloquy with the trial court, [Irwin] stated that she assaulted Hoopes because of the way he treated her during the three years that they were together. (1/11/06 Sentencing Hrg., pp. 25, 42.) [Irwin] claimed that she intended to leave Hoopes but she "stood by him when he got sick." (1/11/06 Sentencing Hrg., p. 20.) In an effort to justify the beatings, she stated that they never had sex during the three years that they were together, and that when he was in the hospital, he forgot her name and called out the name of a girl he knew twenty years ago. (1/11/06 Sentencing Hrg., p. 44.) The trial court quoted her written statement in which she characterizes the July 7 assault as a "butt whooping." (1/11/06 Sentencing Hrg., p. 47.) The trial court imposed maximum, consecutive sentences. [Irwin]'s conviction was affirmed on direct appeal, however, the sentence was vacated based upon the Ohio Supreme Court's decision in State v. Foster, 109 Ohio St.3d 1, 2006–Ohio–856, 845 N.E.2d 470.

Following remand, but prior to the resentencing hearing, [Irwin] filed several motions, three of which are at issue in this appeal. [Irwin] filed a motion for new trial predicated on deposition testimony offered in a civil case filed against her and the agencies responsible for entrusting Hoopes to her care. In the motion, [Irwin] cites the deposition testimony of several of Hoopes' relatives, an agency employee and a neighbor, who stated that they visited Hoopes in June, 2004, and saw no evidence of abuse. The deponents further stated that Hoopes did not tell them that [Irwin] was abusing him. [Irwin] claimed that the evidence was newly discovered because the depositions were not available during the criminal trial. In addition to the motion for new trial, [Irwin] filed a motion to subpoena the foregoing individuals for the resentencing hearing at the state's expense.

[Irwin] also filed a motion seeking an expert witness to testify at the resentencing hearing on the subject of peginterferon-induced psychosis. [Irwin] began a regimen of peginterferon to treat Hepatitis C in March of 2004. (8/6/09 Sentencing Hrg., p. 47.) According to an informational brochure admitted into evidence at the resentencing hearing, the side effects of the drug include neuropsychiatric events such as depression, aggressive behavior, psychoses, and suicidal tendencies. [Irwin] is a recovering drug addict with a history of depression and suicide attempts. She attributed the July 7th assault to peginterferon-induced psychosis.

3

>The trial court denied all three of foregoing motions. At the resentencing hearing, [Irwin] claimed that she did not harm Hoopes in May and June of 2004, relying on the deposition testimony from the civil trial. With respect to the assault on July 7, 2004, she alleged that Hoopes was aware that she was taking peginterferon, and that he was verbally abusive and encouraged her to kill herself because he did not want to die alone. (8/6/09 Sentencing Hrg., p. 46.) Although she attributed the assault to peginterferon-induced psychosis, she conceded at the resentencing hearing that she did not harm herself, or anyone other than Hoopes, while she was taking peginterferon. (8/6/09 Sentencing Hrg., pp. 47–48.)
>
>[Irwin] claimed at the resentencing hearing that she had to start the peginterferon treatment in March of 2004. However, the medical records attached to her sentencing memorandum show that the treatment could have been delayed or completely foregone. [Irwin] claimed that she started the year-long regimen of peginterferon because her hepatitis was going to "turn to the next stage of the disease, which makes peginterferon treatment null and void." She claimed that she was "at the end of [her] time for treatment." (8/6/09 Sentencing Hrg., p. 41.)
>
>According to the notes of [Irwin]'s physician, Dr. John S. Park, [Irwin]'s disease was "very mild." (3/29/04 Notes .) Because of [Irwin]'s history of depression, and the serious potential side effects of peginterferon, Dr. Park told her that she could wait for a better treatment or delay treatment until Hoopes' succumbed to his illness. Dr. Parks' notes indicate that "[Irwin] does not wish to defer treatment at this time, despite [his] explanation that probably there would be very little change in her status with waiting." (3/29/04 Notes.) The notes indicate that [Irwin] was warned about the potential side effects of the drug.
>
>On remand, the trial court imposed maximum, consecutive sentences.

(Doc. 7, RX 2; State v. Irwin, No. 09MA137, 2011 WL 775910, at *1-*4 (Ohio Ct. App. March 4, 2011).)

4

On appeal of the trial court's judgment, Irwin, through counsel, raised five assignments of error[2]:

> 1. The trial court's denial of Defendant/Appellant's motion for a new trial was an abuse of discretion.
>
> 2. The trial court denied Defendant/Appellant a due process right by failing to provide Defendant/Appellant with expert to assist her at her sentencing hearing.
>
> 3. The trial court denied Defendant/Appellant a constitutional right when it denied Defendant/Appellant's motion to have witnesses subpoenaed for the sentencing hearing.
>
> 4. The trial court abused its discretion and failed to make the statutory findings necessary for the imposition of non-mandatory consecutive sentences.
>
> 5. The trial court violated due process by denying Defendant/Appellant a sentencing jury.

(Doc. 7, RX 26.) The court of appeals affirmed the judgment of the trial court. (Doc. 7, RX 2; Irwin, 2011 WL 775910, at *10.)

The Supreme Court of Ohio granted Irwin's motion for leave to file a delayed appeal (doc. 7, RX 30), and Irwin subsequently set forth the following propositions of law:

> 1. The trial court's denial of Defendant/Appellant's motion for a new trial was an abuse of discretion.

---

[2] Before appellate counsel filed a notice of appearance, Irwin had filed an appellate brief pro se. The court of appeals noted that all of her pro se assignments of error were raised by counsel, with the exception of her claim that "the trial court should not have permitted the state to file two responses to the motion for new trial." The court of appeals overruled all of her assignments of error. (Doc. 7, RX 2; Irwin, 2011 WL 775910, at *4.)

5

    2. The trial court denied Defendant/Appellant a due process right by failing to provide Defendant/Appellant with an expert witness to assist her at her sentencing hearing.

    3. The trial court denied Defendant/Appellant a constitutional right when it denied Defendant/Appellant's motion to have witnesses subpoenaed for the sentencing hearing.

    4. The trial court abused its discretion by allowing the state to file two separate answers against Appellant's single motion for new trial and to present newly discovered evidence.

(Doc. 7, RX 31.)

On Sept. 21, 2011, the Supreme Court of Ohio denied leave to appeal, and dismissed the appeal as not involving any substantial constitutional question. (Doc. 7, RX 32; State v. Irwin, 129 Ohio St.3d 1475, 953 N.E.2d 841 (2011).)

## II. HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus. Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court. The Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States."

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-413 (2002). See also Lorraine v. Coyle, 291 F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Williams, 529 U.S. at 405. See also Price v. Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect. Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law. Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

Irwin has filed her petition pro se. The pleadings of a petition drafted by a pro se litigant are held to less stringent standards than formal pleadings drafted by lawyers, and will be liberally construed. Urbina v. Thoms, 270 F.3d 292, 295 (6th Cir. 2001) (citing Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972) (per curiam)). Other than that, no special treatment is afforded litigants who decide to proceed pro se. McNeil v. United States, 508 U.S. 106, 113 (1993)

(strict adherence to procedural requirements); Jourdan v. Jabe, 951 F.2d 108 (6th Cir. 1991); Brock v. Hendershott, 840 F.2d 339, 343 (6th Cir. 1988).

### III. STATE LAW IN FEDERAL HABEAS

The respondent argues that all four of Irwin's habeas claims are barred from review as they all simply challenge the discretionary authority of the state courts. (Doc. 7, at 23.) A federal court may issue a writ of habeas corpus only if the court finds that a state conviction violates the Constitution, laws, or treaties of the United States. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Habeas relief is not available for errors of state law. Wilson v. Corcoran, 131 S.Ct. 13, 16 (2010); Estelle, 502 U.S. at 67 (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)). In other words, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Wilson, 131 S.Ct. at 16; Estelle, 502 U.S. at 67-68.

#### A. Alleged Abuse of Discretion

The first and fourth grounds of the petition argue that the state trial court abused its discretion in its procedural rulings. An alleged abuse of discretion by the state trial court is not a constitutional violation. Stanford v. Parker, 266 F.3d 442, 459 (6th Cir. 2001), cert. denied, 537 U.S. 831 (2002) (citing Sinistaj v. Burt, 66 F.3d 804, 808 (6th Cir. 1995)). Irwin relied entirely on state law when arguing for relief based on the denial of her motion for new trial. (Doc. 7, RX 26, appellate

8

brief, at 7-8; see generally Pudelski v. Wilson, 576 F.3d 595, 603 (6th Cir. 2009), cert. denied, 130 S.Ct. 3274 (2010).) Her argument concerning the court's alleged abuse of discretion by allowing the state to file two separate answers does not rely on any case law or other authority at all, simply invoking the due process clause in a conclusory manner. (Doc. 7, RX 25, pro se appellate brief, at 10-11.)

Irwin has failed to establish that the state court's ruling concerning the first and fourth grounds of her petition was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. The petition should not be granted on the basis of the first or fourth grounds.

## IV. WITNESSES AT SENTENCING HEARING

The second and third grounds are based on the trial court's rulings concerning witnesses at the resentencing hearing. Irwin complains that the trial court failed to provide her with an expert witness to assist at her resentencing hearing, and that the court denied her motion to have witnesses subpoenaed for the resentencing hearing. Unlike the earlier-discussed grounds, Irwin did not rely solely on state law in her arguments on appeal on these issues.

It is well-established that a defendant's rights at sentencing differ considerably from her pre-conviction trial rights. United States v. Christman, 509 F.3d 299, 304 (6th Cir. 2007) (well established that neither rules of evidence nor

9

right to confront witnesses applies at sentencing); United States v. Jackson, 453 F.3d 302, 305 (5th Cir.), cert. denied, 549 U.S. 987 (2006) (citing cases); see also United States v. Silverman, 976 F.2d 1502, 1507-1508, 1511 (6th Cir. 1992) (en banc), cert. denied, 507 U.S. 990 (1993); United States v. Rodriguez, 897 F.2d 1324, 1328 (5th Cir.), cert. denied, 498 U.S. 857 (1990).  For example, federal courts have found that due process does not require that a defendant be given the opportunity to call and cross-examine witnesses at sentencing.  Jackson, 453 F.3d at 305-306 (citing United States v. Henderson, 19 F.3d 917, 927 (5th Cir.), cert. denied, 513 U.S. 877 (1994)); United States v. Giltner, 889 F.2d 1004, 1008 (11th Cir. 1989) (citing United States v. Satterfield, 743 F.2d 827, 840 (11th Cir. 1984)).

A.  Expert Witness

On appeal, Irwin argued that she was entitled, as a matter of due process and fundamental fairness, to the assistance of an expert for her 2009 resentencing hearing, in order to support the theory that the effect of medication she was taking at the time of the offense should be considered in mitigation.  (Doc. 7, RX 26, at 9, citing Ake v. Oklahoma, 470 U.S. 68, 77 (1985), and State v. Mason, 82 Ohio St.3d 144, 149, 694 N.E.2d 932 (1998), cert. denied, 525 U.S. 1057 (1998).)

The state court of appeals relied on state law in overruling Irwin's second assignment of error, finding the trial court did not abuse its discretion when it denied her motion for an expert witness at sentencing.  The court quoted from State

v. Mason, which described the circumstances under which the Supreme Court of Ohio found a trial court would be required to provide funds for expert assistance:

> "[D]ue process, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution, requires that an indigent criminal defendant be provided funds to obtain expert assistance at state expense only where the trial court finds, in the exercise of a sound discretion, that the defendant has made a particularized showing (1) of a reasonable probability that the requested expert would aid in his defense, and (2) that denial of the requested expert assistance would result in an unfair trial."

(Doc. 7, RX 2; Irwin, 2011 WL 775910, at *6 (quoting Mason, 82 Ohio St.3d at 150, 694 N.E.2d at 943.)  The court also relied on a subsequent case which found that determination of a motion for public payment of an expert witness lies within the discretion of the trial court, and outlined factors for the court's consideration.  (Doc. 7, RX 2; Irwin, 2011 WL 775910, at *7 (citing State v. Brady, 119 Ohio St.3d 375, 894 N.E.2d 671 (2008), cert. denied, 129 S.Ct. 2389 (2009).)

The decision of the state court of appeals, then, was based on Ohio law. However, both Brady and Mason relied in part on Ake v. Oklahoma, thus the question becomes whether the ruling of the state court was contrary to clearly established federal law, as determined by the Supreme Court of the United States. A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases."  Williams, 529 U.S. at 405.

11

The U.S. Supreme Court, in Ake v. Oklahoma, 470 U.S. 68 (1985), held that "when an indigent capital defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, due process requires that the defendant be provided access to the assistance of a psychiatrist." Medina v. California, 505 U.S. 437, 444 (1992) (citing Ake); see also Tuggle v. Netherland, 516 U.S. 10, 12 (1995) (citing Ake, when prosecutor presents psychiatric evidence of defendant's future dangerousness in capital sentencing hearing, due process requires State provide assistance of psychiatrist).

The Supreme Court has not, thus far, extended its holding to non-psychiatric experts, or to non-capital defendants.  See generally Babick v. Berghuis, 620 F.3d 571, 579 (6th Cir. 2010), cert. denied, 131 S.Ct. 2121 (2011) (citing Caldwell v. Mississippi, 472 U.S. 320, 323 n.1 (1985), and other cases); Wogenstahl v. Mitchell, 668 F.3d 307, 340 (6th Cir.), cert. denied, 133 S.Ct. 311 (2012) (Ake does not mandate appointment of mitigation expert or investigator for penalty phase).

The Sixth Circuit has interpreted Ake to allow psychiatric assistance during sentencing if "1) the defendant's sanity was a significant factor at trial, or 2) the state presents at sentencing psychiatric evidence of future dangerousness." Smith v. Mitchell, 348 F.3d 177, 207 (6th Cir. 2003), cert. denied, 543 U.S. 841 (2004) (citing Mason v. Mitchell, 320 F.3d 604, 615-616 (6th Cir. 2003), and other cases). In Smith, the court held Smith's claim failed because his sanity was not a significant issue during trial.  Neither of the two Ake factors were present in this

12

case.  Irwin did not argue her sanity as a significant issue at trial, nor did she claim that the state presented at sentencing psychiatric evidence of future dangerousness. (Doc. 7, RX 26, at 9.)

Irwin has failed to establish that the state court's ruling was contrary to clearly established federal law, as determined by the Supreme Court in Ake v. Oklahoma.  The petition should not be granted on the basis of the second ground.

### B.  Compulsion of Witnesses

On appeal, Irwin argued that she was denied a meaningful opportunity to present mitigation evidence because the court overruled her "motion to subpoena a number of different witnesses" to her August 2009 resentencing hearing.  Irwin argued that the trial court's ruling violated the Sixth Amendment right of compulsory process, and the Supreme Court's ruling in Washington v. Texas, 388 U.S. 14, 19 (1967).  (Doc. 7, RX 26, at 10.)

The state court of appeals recognized that the Sixth Amendment provides that a criminal defendant has the right to compulsory process to procure the attendance of witnesses.  (Doc. 7, RX 2; Irwin, 2011 WL 775910, at *7; see generally Washington, 388 U.S. at 18-19 (Sixth Amendment right to compulsory process applies to states).  However, the court noted that the right of compulsory process is a trial right which may not be invoked at a sentencing hearing.  (Doc. 7, RX 2; Irwin, 2011 WL 775910, at *7, citing State v. Clark, No. 07-MA-87, 2008 WL 698936, at *6 (Ohio Ct. App. Mar. 13, 2008).)

The state court of appeals relied on state law for this proposition, thus the question, again, is whether the ruling of the state court was contrary to clearly established federal law, as determined by the U.S. Supreme Court.

The Supreme Court does not appear to have ruled on whether a convicted, non-capital defendant has the right to compulsory process of witnesses at a sentencing hearing.  In ruling that the Sixth Amendment right was applicable to the states, the Court stated that the right "is in plain terms the right to present a defense," to present the defendant's version of the facts "to the jury so it may decide where the truth lies."  Washington, 388 U.S. at 18-19.  "In the exercise of this right, the [parties] must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence."  Chambers v. Mississippi, 410 U.S. 284, 301-302 (1973) (emphasis added).  The Supreme Court portrayed the right, in other words, as a due process trial right.  See also Clark, 2008 WL 698936, at *6 (trial right).

Several federal courts of appeals have ruled that due process does not require that a defendant be given the opportunity to call and cross-examine witnesses at sentencing.  Jackson, 453 F.3d at 305-306 (citing Henderson, 19 F.3d at 927); Giltner, 889 F.2d at 1008 (citing Satterfield, 743 F.2d at 840).

Irwin has identified no Supreme Court case law indicating that the Sixth Amendment trial right of compulsory process is a right at sentencing.  Irwin has failed to establish that the state court's ruling was contrary to clearly established

14

federal law, as determined by the Supreme Court. The petition should not be granted on the basis of the third ground.

## V. SUMMARY

The petition for a writ of habeas corpus should be denied. Irwin has failed to establish that the state court's ruling concerning the grounds of her petition was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

Dated:   Oct. 3, 2013             /s/ Kenneth S. McHargh
                                  Kenneth S. McHargh
                                  United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time WAIVES the right to appeal the District Court's order. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).